**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ADAMS EXTRACT & SPICE, LLC** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO.** 5:20-CV-1222 |
| | § | |
| **ADAMS RIB RUBB, LLC** | § | |
| **Defendant.** | § | |

## ORIGINAL COMPLAINT

Now comes ADAMS EXTRACT & SPICE, LLC, Plaintiff ("Plaintiff" or "Adams"), and brings this suit against ADAMS RIB RUBB, LLC, Defendant ("Defendant" or "Adams Rubb"), and shows:

## PARTIES

1.      Adams is a limited liability company, duly formed and existing under the laws of the State of Texas, having its principal place of business in Gonzales County, Texas.

2.      Defendant is a limited liability company, duly formed and existing under the laws of the State of Florida, having is principal place of business at 3435 SE 41st Place, Ocala, Florida, 34470, or 2110 SW 7th Ave., Unit #104, Ocala Florida  34471.  Defendant's agent for service is Richard Mutarelli, Jr., who may be served at 328 NE 1st Avenue, Suite 100, Ocala, Florida 34470.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper pursuant to 15 U.S.C. § 1121 (actions arising under the Federal Trademark Act) 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship),

1338(a) (acts of Congress relating to patents, trademarks, copyrights), and 1338(b) (pendent unfair competition claims).

4.      The amount in controversy exceeds the minimal jurisdictional requirements.

5.      Venue is properly placed pursuant to 28 U.S.C. § 1391 (general venue) in the Western District of Texas, San Antonio, in that all or a substantial part of the events giving rise to this claim occurred in Texas.

6.      This Court has personal jurisdiction over the Defendant since Defendant has sufficient minimum contact with this State and this Judicial District, and maintenance of the suit in this Judicial District does not offend traditional notions of fair play and substantial justice.

7.      Defendant claims its products have been promoted and sold widely and publicly throughout the country.

8.      Defendant's products have been promoted and sold widely and publicly throughout the country.

9.      Defendant's products have been promoted and sold within the State of Texas.

10.     Defendant is offering to sell and is selling goods and services in Texas and same are the subject of Plaintiffs' allegations set forth herein.

11.     Further, Defendant is offering to sell and is selling goods and services in Texas as a result of the complained of acts set forth herein.

12.     Defendant's acts of infringement took, and continue to take, place in the State of Texas and this Judicial District.

13.     This Court has pendent jurisdiction over all of the claims asserted herein, these claims being necessarily determinable together with the federal claims.

FACTS

**Plaintiff**

14.     Adams & Spice, LLC traces its beginnings back to Battle Creek, Michigan, when John A. Adams began making and selling his Green Plant Sarsaparilla extract, Adamur, in 1888. In 1905, he moved his family to Beeville, Texas.  Adams wanted to come up with a vanilla extract and worked until he came up with the formula he wanted.  He referred to the formula as "Adams Best," and the name stuck.  Over the years, son Fred Adams, and grandson John G. Adams, Sr., continued the family business.  In 1947, the first assorted food color 4-pack line was introduced, and it is still sold today. In 1955, Adams built a new facility that aided in the expansion of products to include a full spice & seasoning line.  In 2002, under new leadership, Adams moved to its new home in Gonzales, TX. In January 2013, Adams, one of the oldest continuously operated companies in Texas and one of oldest spice and extract companies in the United States, celebrated its 125th birthday and was awarded the Texas Treasure Business Award.  Today, Adams proudly manufactures and markets under several Adams Brand banners, including ADAMS BEST®, ADAMS EXTRACT®, ADAMS® Seasoning & Spice, ADAMS RESERVE®, along with the Adams Frozen Skillet Desserts and Adams Premium Ice Cream lines.

15.     Due to the hard work of Adam's ownership, managers, and dedicated employees, Adams has amassed a great amount of customer good-will and loyalty, and Adams has grown into one of the nation's leading brands for spices, vanilla extracts, food colorings, and other products.  Part of its success is due to Adams deliberately making its trade name and trademark into a nationally known brand through the over 130 years of its existence to the relevant consuming public.

- 3 -

16.     Adams has engaged in the sale and offer for sale of goods/services under the following registered trademarks:

a.     ADAMS®, Reg. No. 2996551, for spices.  Attached hereto as Exhibit A is a true and correct copy of Adams' certificate of registration of the trademark ADAMS® incorporated herein by reference.  The registration is in full force and effect, is incontestable, and the mark is still owned and used by Adams.

b.     ADAMS RESERVE®, Reg. No. 3392845, for spices, vanilla, extracts used as flavorings.  Attached hereto as Exhibit B is a true and correct copy of Adams' certificate of registration of the trademark ADAMS RESERVE® incorporated herein by reference.  The registration is in full force and effect, is incontestable, and the mark is still owned and used by Adams.

c.     ADAMS BEST®, Reg. No. 2941343, for vanilla extract, natural and artificial.  Attached hereto as Exhibit C is a true and correct copy of Adams' certificate of registration of the trademark ADAMS BEST® incorporated herein by reference.  The registration is in full force and effect, is incontestable, and the mark is still owned and used by Adams.

d.     ADAMS EXTRACT®, Reg. No. 3003329, for food coloring.  Attached hereto as Exhibit D is a true and correct copy of Adams' certificate of registration of the trademark ADAMS EXTRACT® incorporated herein by reference.  The registration is in full force and effect, is incontestable, and the mark is still owned and used by Adams.

17.     Hereinafter, Adams' registered trademarks, as listed above, and common law marks are collectively referred to as "ADAMSMARKS" unless otherwise noted.

- 4 -

18.     Adams was able to establish a high degree of consumer recognition and good will in the ADAMSMARKS by extensively advertising its ADAMSMARKS in its direct communications with prospective and actual customers;  using it on delivery vehicles; using it in direct mail advertisements, other print advertisements and promotions; using it on internet and T.V. advertising; and in connection with its public service projects and donations.  Adams does business through numerous store-front facilities, and through Plaintiff's internet domain name www.adamsextract.com, which incorporates its ADAMSMARKS mark.

19.     Additionally, by virtue of the amount of time that Adams has used the registered mark and by meeting the statutory requirements, Plaintiff's ADAMSMARKS trademark is incontestable.

20.     Title 15, United States Code, §1115(b) makes incontestable federal registrations more powerful than regular federal registrations:

> To the extent that the right to use the registered mark has become incontestable under § 1065 of this title, the registration shall be **conclusive evidence** of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's **exclusive right** to use the registered mark in commerce. [Emphasis added.]

21.     By virtue of Plaintiff's use of the ADAMSMARKS mark in commerce, Adams has also acquired common law rights in the mark in addition to those afforded by the ADAMSMARKS registrations.

22.     Plaintiff's ADAMSMARKS goods and services are well known for their high quality.  Adams has advertised its mark ADAMSMARKS extensively and at great expense.   It

has become widely and favorably accepted by the community at large and has enjoyed much commercial success.

23.     As a result of the unique and distinctive nature of Plaintiff's mark, the goods and services offered therein, the advertising associated therewith, and widespread and favorable public acceptance and recognition, Plaintiff's ADAMSMARKS trademark, has become a strong mark and an asset of substantial and incalculable value as a symbol of Adams, well-known and widely perceived by consumers to identify the quality products and services of Adams, and its favorable goodwill.

24.     Customers identify Plaintiff's goods by the ADAMSMARKS.

25.     Often, Plaintiff's sales of its goods are to repeat customers who purchase Plaintiff's goods because they are satisfied with their prior use of Plaintiff's ADAMSMARKS goods.

26.     Plaintiff's use of the ADAMSMARKS in interstate commerce has been open and notorious.

27.     Title 15, United States Code, § 1114(1) makes unauthorized use of Plaintiff's federally registered marks in a way likely to cause confusion or to cause mistake unlawful.

28.     Title 15, United States Code, § 1125(a), makes unauthorized use of Plaintiff's mark in a way likely to cause confusion or to cause mistake unlawful.

**Defendant**

29.     On or about July 8, 2019, Defendant began operation of its business selling seasonings and spice products.

30.     Seasonings and spice products fall within international class 030, as covered by Plaintiff's federal registrations above.

31.     On or about March 4, 2020, Gary A. Thurston ("Thurston"), an individual residing in Ocala, Florida, filed a United States trademark application for the mark ADAMS RIB RUBB EST. 1999 and Design, Serial No. 88/819,966 ("Thurston's Application").

32.     Thurston's Application recites the covered goods as "Seasonings; Spices."

33.     On information and belief, Thurston owns a controlling interest in Defendant, Adams Rib Rubb, LLC.

34.     Thurston is the president, director, member, registered agent, and/or other genre of principal of Adams Rib Rubb.

**Facts**

35.     On information and belief, Thurston controlled nearly all decisions of Adams Rib Rubb.

36.     On information and belief, Thurston was the dominant influence of Adams Rib Rubb.

37.     On information and belief, Thurston provided hands-on decision making with respect to the activities of Adams Rib Rubb.

38.     On information and belief, Thurston makes most of Adams Rib Rubb's company decisions.

39.     On information and belief, Thurston has the right and ability to supervise and/or control infringing conduct of Adams Rib Rubb, and/or to stop infringing conduct once it begins.

40.     On information and belief, Thurston has direct financial interests in infringing activities of Adams Rib Rubb.

41.     On information and belief, Thurston is allowing Defendant to use the trademark ADAMS RIB RUBB EST. 1999 and Design.

42.     On information and belief, Thurston is allowing Defendant to use the trademark ADAMS RIB RUBB.

43.     On information and belief, Thurston is directing Defendant to use the trademark ADAMS RIB RUBB EST. 1999 and Design.

44.     On information and belief, Thurston is directing Defendant to use the trademark ADAMS RIB RUBB.

45.     Thurston caused, enabled, facilitated, and/or materially contributed to the actions of Adams Rib Rubb in using the trademark ADAMS RIB RUBB EST. 1999 and Design as complained of herein by directly and/or indirectly promoting the actions.

46.     Thurston caused, enabled, facilitated, and/or materially contributed to the actions of Adams Rib Rubb in using the trademark ADAMS RIB RUBB as complained of herein by directly and/or indirectly promoting the actions.

47.     Thurston has refused to exercise his right and/or ability to stop the actions of Adams Rib Rubb in using the trademark ADAMS RIB RUBB EST. 1999 and Design as complained of herein after such use began.

48.     Thurston has refused to exercise his right and/or ability to stop the actions of Adams Rib Rubb in using the trademark ADAMS RIB RUBB as complained of herein after such use began.

49.     On information and belief, Defendant is using the terms ADAMS RIB RUBB EST. 1999 and ADAMS RIB RUBB in advertisements, on labels, for product and source identification, and in other ways customary to the trade.

50.     The following are samples of use of the term ADAMS RIB RUBB EST. 1999 and Design, and ADAMS RIB RUBB by Defendant in connection with Defendant's offer for sale and sale of seasonings and spices:

a.      Attached hereto as Exhibit E is a true and correct copy of an image of the front panel of the packaging for a product marketed, sold, and distributed by Defendant, which is incorporated herein by reference.

b.      Attached hereto as Exhibit F is a true and correct copy of an image of the first side panel of the packaging for a product marketed, sold, and distributed by Defendant, which is incorporated herein by reference.

c.      Attached hereto as Exhibit G is a true and correct copy of an image of the back panel of the packaging for a product marketed, sold, and distributed by Defendant, which is incorporated herein by reference.

d.      Attached hereto as Exhibit H is a true and correct copy of an image of the second side panel of the packaging for a product marketed, sold, and distributed by Defendant, which is incorporated herein by reference.

e.      Attached hereto as Exhibit I is a true and correct copy of an image of the interior packaging for a product marketed, sold, and distributed by Defendant, which is incorporated herein by reference.

51.     On information and belief, an agent for Defendant has contacted a manager at Brookshire Brothers grocery seeking to sell Adams Rib Rubb products in the Brookshire Brothers grocery stores, which operate approximately 100 stores in central and east Texas, western LA and a few stores in Arkansas.

52.     The manager at Brookshire Brothers contacted Adams about the incident because, on information and belief, he thought the Adams Rib Rubb product looked a lot like Plaintiff's products.

53.     On information and belief, Defendant has attempted to sell Adams Rib Rubb products to Brookshires Grocery in Texas.

54.     On information and belief, Brookshires Grocery and Brookshire Brothers are the two largest independent grocery chains in east Texas.

55.     On September 3, 2020, Defendant posted on its Facebook page that "Adams Rib Rubb is now proud to announce we can now be found in any of the 110 @brookshirebrothers locations nationwide!"

56.     Also on September 3, 2020, Defendant posted on its Facebook page that "We are happy to announce that you can now purchase Adams Rib Rub at one of the 350 @grocery_outlet locations across the US!"

57.     Defendant states on both its website and on its Facebook page that its Adams Rib Rubb product is sold with free shipping throughout the U.S.

58.     Attached hereto as Exhibit J is a true and correct copy of the top portion of the results after a search on amazon.com for "Adams rub," which is incorporated herein by reference.

59.     Adams and Defendant each sell their spice rubs on Amazon, which if "Adams rub" is searched, products from Adams and Defendant are shown as the first results, side-by-side. *See* Exhibit J.

60.     On information and belief, an agent for Defendant has contacted a representative at HEB grocery stores seeking to sell the Adams Rib Rubb product in the HEB grocery stores in Texas.

61.     The above uses of ADAMS RIB RUBB EST. 1999 by Defendant have been made available, by Defendant, to consumers.

62.     The mark ADAMS RIB RUBB EST. 1999, as shown in Defendant's advertisement, and the name by which Defendant is doing business is so similar to the ADAMSMARKS registered and used by Adams that it is likely to cause confusion or to cause mistake or to deceive the consuming public into believing that the Defendant's goods and services are sponsored by or related to Plaintiff's ADAMSMARKS goods and services.

63.     On information and belief, Defendant had actual notice of Plaintiff's ownership of the ADAMSMARKS mark prior to its first use of ADAMS RIB RUBB EST. 1999.

64.     Defendant had constructive notice of Plaintiff's ownership of the ADAMSMARKS mark prior to its first use of ADAMS RIB RUBB EST. 1999.

65.     On information and belief, Defendant had actual knowledge that Adams was doing business as ADAMSMARKS, prior to Defendant beginning direct competition with Adams, in the same market area.

66.     Defendant's use of ADAMS RIB RUBB EST. 1999 has been without Plaintiff's permission.

67.     Defendant's acts have injured and are likely to injure the business reputation and to dilute the distinctive quality of Plaintiff's ADAMSMARKS, and damage Plaintiff's good-will.

68.     Defendant's acts have been committed maliciously, willfully, and wantonly to deprive Adams of its rights and property and the complained-of acts were done maliciously and

willfully and with reckless disregard for the rights of Adams and the Adams was thereby damaged, and continues to be damaged.

69.     Defendant has been unjustly enriched due to its unlawful acts as set forth herein.

70.     On information and belief, Defendant's use of the confusingly similar mark ADAMS RIB RUBB EST. 1999 to Plaintiff's ADAMSMARKS, has been committed knowingly and willfully and will continue unless enjoined by this Court.

71.     On information and belief, instances of actual confusion by consumers, confusing ADAMSMARKS and ADAMS RIB RUBB EST. 1999 with one-another have occurred.

72.     Instances of actual confusion by consumers confusing the ADAMSMARKS and ADAMS RIB RUBB EST. 1999 with one-another are likely to occur, and to continue to occur, unless Defendant's complained-of acts are enjoined by this Court.

73.     Unless Defendant's acts are enjoined, Adams will suffer great, incalculable and irreparable harm.

74.     Internet users often use a search engine to locate websites relevant to an inquiry by entering search terms into a search field.  For example, customers and potential customers looking for Plaintiff's ADAMSMARKS products might simply type one of "Adams," "Rib, " "Rub," or some variation thereof, into the search field of a search engine website  such as Google (www.google.com).

75.     If a user types such a word or phrase into the search field of a search engine website, the search engine then uses the word or phrase to find websites that have terms which are the same or similar to the search term.  Some Internet search engines such as Google use proprietary algorithms to identify and sort relevant websites.

76.     Internet search engines such as Google also engage in advertising sales in which the search engines sell search keywords – or keyword triggers – to advertisers.  An internet retail business may become an advertiser by purchasing a keyword trigger that causes an advertisement for the business to appear when a user types in the keyword that the business purchased.  The advertiser's advertisement then appears as a sponsored link directly above or to the side of the natural search results.  In this way, purchasing a keyword trigger allows retail sellers to target potential customers with certain interests by causing the advertiser's advertisements to appear in response to search terms typed into the search engine that match keyword triggers purchased by the advertiser.

77.     An Internet user of an Internet search engine clicking on a sponsored link results in a visit to the advertiser's retail site and a potential sale for the advertiser.  Advertisers typically pay the search engine each time an internet user clicks on the advertiser's sponsored links in the search engine's website.  The per-click payment is payment for a referral or a "lead" for a prospective customer.

78.     Internet search engines typically sell keyword triggers without distinguishing between trademarked and non-trademarked terms.

79.     On information and belief, the presentation of "ADAMS RIB RUBB EST. 1999" in the Google sponsored link advertisement is likely to cause at least some persons seeking Plaintiff's ADAMSMARKS to be initially confused into believing there is a sponsorship, connection, or affiliation between Defendant's "ADAMS RIB RUBB EST. 1999" advertisement and Plaintiff's ADAMSMARKS business.

## COUNT I
*(Federal Trademark Infringement)*

80.     Defendant has infringed Plaintiff's mark in interstate commerce by various acts, including, without limitation, the selling, offering for sale, promotion and advertising seasonings and spices under the name "ADAMS RIB RUBB EST. 1999" and/or "ADAMS RIB RUBB" of a type virtually identical to the type of seasonings and spices among other goods offered by Adams, the registration of the domain name "adamsribrubb.com" and the operation of an Internet Web site, prominently displaying, advertising, and promoting seasoning and spice products under the ADAMS RIB RUBB EST. 1999 and ADAMS RIB RUBB marks.

81.     Defendant has, without the consent of Adams, used in commerce a reproduction, counterfeit, copy, or colorable imitation of Adams' registered mark in connection with the sale, offering for sale, distribution, or advertising of goods and services in connection with which such use is likely to cause confusion or to cause mistake or to deceive and has reproduced, counterfeited, copied or colorably imitated a registered mark and applied such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive, all in violation of 15 U.S.C. § 1114.

82.     Defendant's actions, as described herein, were committed willfully and with reckless disregard for Plaintiff's rights.  Adams is entitled to recover exemplary damages in addition to its actual damages.

## COUNT II
### *(Federal Unfair Competition)*

83.    Defendant has been and is continuing to use a false description of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of its goods, services, or commercial activities by another person and, in commercial advertising or promotion, has misrepresented and is misrepresenting the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, all in violation of 15 U.S.C. § 1125(a) (Lanham Act §43(a)).

84.    Defendant's actions, as described herein, were committed willfully and with reckless disregard for Plaintiff's rights.  Adams is entitled to recover exemplary damages in addition to its actual damages.

## COUNT III
### *(Federal Trademark Dilution)*

85.    ADAMSMARKS is a famous mark pursuant to 15 U.S.C. §1125(c) (Lanham Act §43(c)).  Defendant's use of the mark in its printed advertisements, marketing, signage, sales of products, and other commercial use in commerce constitutes a dilution of Plaintiff's mark.

86.    This conduct has injured Plaintiff's business reputation and dilutes the distinctive quality of Plaintiff's mark.

87.    Adams has suffered irreparable harm, and unless enjoined, Defendant will continue to violate the Lanham, resulting in further irreparable harm to Adams for which Adams has no adequate remedy at law.

88.     Defendant has willfully intended to trade on Plaintiff's reputation and to cause dilution to the famous ADAMSMARKS mark.

89.     Adams is entitled to injunctive relief, as well as those remedies available pursuant to 15 U.S.C. §1117(a).

## COUNT IV
### (False Designation Of Origin Under 15 U.S.C. § 1125(A))

90.     On information and belief, Defendant has used the designation ADAMS RIB RUBB EST. 1999 in connection with seasonings and spice products in interstate commerce. Said use of the designation ADAMS RIB RUBB EST. 1999 is a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion and to cause mistake, and to deceive as to the affiliation, connection or association of Defendant with Adams and as to the origin, sponsorship, or approval of Defendant's products and commercial activities by Adams.

91.     On information and belief, Defendant's wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Plaintiff's business, reputation and good will in its ADAMSMARKS. Adams has no adequate remedy at law.

## COUNT V
### (State Trademark Infringement)

92.     Defendant's acts complained of herein comprise trademark infringement against Adams under the laws of the State of Texas.

- 16 -

## COUNT VI
*(State Unfair Competition)*

93.     Defendant's acts complained of herein comprise unfair competition against Adams under the laws of the State of Texas.

## COUNT VII
*(State Dilution)*

94.     Plaintiff's ADAMSMARKS constitute famous marks in the State of Texas pursuant to Texas Business and Commerce Code § 16.103, which mark became famous prior to the commencement of Defendant's activities as alleged herein.

95.     On information and belief, Defendant's activities as alleged herein dilute the distinctive quality of ADAMSMARKS in violation of Texas Business and Commerce Code § 16.103.

96.     On information and belief, Defendant's wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Plaintiff's business, reputation and good will in its ADAMSMARKS.  Adams has no adequate remedy at law.  Defendants' acts complained of herein dilute the distinctive quality of Plaintiff's trademark in violation of Texas Business & Commerce Code § 16.29.   Unless enjoined, Defendant will continue to violate the Texas Antidilution Act, resulting in irreparable harm to Adams for which Adams has no adequate remedy at law.

## COUNT VIII
*(Unjust Enrichment and Misappropriation)*

97.     Defendant's acts complained of herein have unjustly enriched Defendant and have misappropriated Plaintiff's property.

- 17 -

## COUNT IX
### *(Injunctive Relief)*

98.     Adams seeks a permanent injunction pursuant to 15 U.S.C. §§1116 and 1125(c), and Texas Business & Commerce Code § 16.29.

99.     Adams has no adequate remedy at law or otherwise for the harm or damage done by Defendant because Plaintiff's business will be irreparably damaged and such damage is difficult to determine by the use of a name that is likely to cause confusion to customers and vendors.

100.    Adams will suffer irreparable harm, damage, and injury unless the acts and conduct of Defendant complained of above are enjoined because the use of Defendant's mark is likely to cause confusion among customers and vendors which will result in a loss of customers, loss of revenue, loss of profits, diminished marketing and advertising, loss of reputation, and trademark dilution.

101.    It is essential that Defendant be restrained from doing and performing the above described acts, because if Defendant is allowed to use the name ADAMS RIB RUBB EST. 1999, Adams will suffer a financial loss to its business which is difficult to determine and which may not be regained.

## COUNT X
### *(Attorney's Fees)*

102.    Adams has incurred attorney's fees and other costs associated with the filing of this suit.

103.    As a result of the conduct described above, Adams is entitled to recover its attorneys' fees.

## COUNT XI
### *(Exemplary Damages)*

104.     Defendant's actions, as described herein, were committed willfully and with reckless disregard for Plaintiff's rights.   Adams is entitled to recover exemplary damages in addition to its actual damages.

## CONSOLIDATED ALLEGATIONS

105.     Each of the facts alleged above is alleged with regard to each and every Count and cause of action herein, and are realleged and incorporated by reference into the allegations of the Counts of this Complaint as if fully set forth therein.

## PRAYER

WHEREFORE, Plaintiff, Adams Extract & Spice, LLC, respectfully prays:

I.     At final hearing, a permanent injunction be granted and a writ of injunction issue commanding Defendant, its agents, servants, employees, attorneys, or anyone acting in concert with it be permanently enjoined from:

    A.     Representing to anyone or committing any acts likely to cause members of the public to believe that Defendant's goods or services have any authority, sponsorship, affiliation, or connection with Plaintiff or Plaintiff's goods and services.

    B.     Using, in any manner ADAMS, the ADAMSMARKS, ADAMS RIB RUBB EST. 1999, or any other words similar thereto that may cause, or may be likely to

cause, confusion, mistake, or deception by the public, alone or in combination with any other word or words.

      C.     Continuing Defendant's unlawful acts as complained of herein.

II.     Defendant pay to Plaintiff such damages as Plaintiff has sustained as a consequence of Defendant's wrongful acts.

III.     Defendant account for and return to Plaintiff all monies, gains, and profits and advantages obtained by Defendant due to Defendant's wrongful acts.

IV.     Defendant pay to Plaintiff exemplary and additional damages.

V.     Defendant pay to Plaintiff, Plaintiff's reasonable attorneys' fees.

VI.     Defendant pay to Plaintiff pre-judgment and post-judgment interest at the highest rate allowed by law.

VII.     Defendant pay to Plaintiff, Plaintiff's costs of this action.

VIII.     The Court award to Plaintiff such other and further relief as may be deemed proper.

Respectfully submitted,

JACKSON WALKER, L.L.P.
112 East Pecan Street, Suite 2400
San Antonio, TX  78205
210-978-7783  (Telephone)
210-242-4683  (Facsimile)
cwhite@jw.com

By */s/ Cline H, White*
Cline H. White, Texas State Bar No. 00785229

Attorneys for Plaintiff